UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| EARLIE B.A. BERRY, JR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:19-cv-01476-TWP-MJD |
| | ) |
| INDIANA DEPARTMENT OF CORRECTION, | ) |
| Classification Director, DUSHAN ZATECKY, | ) |
| STAFFORD, D. REAGLE, CHAD EVANS, | ) |
| F. LITTLEJOHN, K. HUNTER, WENDY | ) |
| KNIGHT, JOHN POER, and INDIANA | ) |
| DEPARTMENT OF CORRECTION, | ) |
| Commissioner, | ) |
| | ) |
| Defendants. | ) |

**ORDER DENYING MOTION TO SUPPLEMENT MOTION FOR EXTENSION OF TIME, GRANTING MOTION FOR SUMMARY JUDGMENT, AND DIRECTING ENTRY OF FINAL JUDGMENT**

This matter is before the Court on a Motion for Summary Judgment filed by Defendants, Warden Dushan Zatecky, Kim Stafford, Purdue, D. Reagle, Dr. Easter-Rose, Chad Evans, Warden Wendy Knight, Internal Investigator John Poer, Assistant Warden F. Littlejohn, K. Hunter, Commissioner of the Indiana Department of Correction ("IDOC"), and the IDOC Classification Director. (Dkt. 79.) Plaintiff Earlie B.A. Berry, Jr. ("Berry"), an Indiana prisoner, initiated this action alleging he suffers from mental health issues, and that the Defendants have wrongfully placed and kept him in solitary confinement in deliberate indifference to his mental health issues. Also before the Court is Plaintiff's Request to Supplement Motion for Extension of Time and Address Issues, (Dkt. 100). For the reasons explained in this Order, Berry's Motion to Supplement is **denied as moot** and the Court **grants** the Defendants' Motion for Summary Judgment.

## I.   SUMMARY JUDGMENT STANDARD

The purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Electric Industrial Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 106 S. Ct. 1348 (1986).  Summary judgment is appropriate when the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law.  *See* Federal Rule of Civil Procedure 56(a).  A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  To survive a motion for summary judgment, the non-moving party must set forth specific, admissible evidence showing that there is a material issue for trial.  *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).  The court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor.  *See Darst v. Interstate Brands Corp*., 512 F.3d 903, 907 (7th Cir. 2008).  It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder.  *See O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011).  The court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has repeatedly assured the district courts that they are not required to "scour every inch of the record" for evidence that is potentially relevant to the summary judgment motion before them.  *Grant v. Trustees of Ind. Univ.,* 870 F.3d 562, 573-74 (7th Cir. 2017).

A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.  If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute.  *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## II. PROCEDURAL BACKGROUND

The Court will first address Berry's Motion to Supplement his motion for extension of time, (Dkt. 100). In his Amended Complaint, Berry also brought claims against Martin Perdue, Dr. Ciemone Easter-Rose, and Wexford of Indiana LLC. ("Medical Defendants"), but on July 20, 2020, the parties stipulated to the dismissal of the Medical Defendants. (Dkt. 89.) The Defendants' Motion for Summary Judgment was filed on June 12, 2020. (Dkt. 79.) Since that time, the Court granted Berry several extensions of time to respond to the summary judgment motion due to his time in quarantine after he contracted COVID-19 and his lack of access to his legal papers. (Dkt. 86; Dkt. 97.) Berry received access to his legal documents on December 31, 2020.[1] On February 19, 2021, the Court gave Berry a final extension through March 8, 2021, by which to respond to the Defendants' Motion for Summary Judgment. (Dkt. 97.) That Order notified Berry that the Court would not consider any future motions for extensions of time unless he strictly complied with Rule 56(d) of the Federal Rules of Civil Procedure by specifically setting forth in an affidavit or declaration that, for specified reasons, he could not present facts essential to justify his opposition to summary judgment. *Id*.

That same day, Berry filed a motion for extension of time, stating that he had received his legal documents on December 31, 2020, but had not received any court filings from January 10, 2021 to February 16, 2021. (Dkt. 98.) He therefore requested another extension of time to respond

---

[1] *See Berry v. Zatecky*, 1:19-cv-01511-SEB-DML, (Dkt. 67), in which state defendants reported that "[o]n December 31, 2020, Mr. Berry received all his legal mail and signed a release indicating that he had received the same. Prior to receiving all his legal mail, Mr. Berry was to only receive certain portions of his legal mail at a given time due to the facility's security restrictions (a page limit)."

3

to the summary judgment motion. The docket reflects that no filings were made in this case between January 10, 2021 and February 16, 2021, which would explain why Berry received no filings during that time.

Berry also timely mailed his response brief on March 8, 2021.[2] (Dkt. 104.) On March 10, 2021, Berry filed the motion to supplement his motion for extension of time. He reported that he did not receive the Court's February 19, 2021 Order until March 1, 2021. (Dkt. 100; Dkt. 101-1.) Thus, Berry received the Order a week before his deadline to respond to the summary judgment motion, yet he did not respond by the deadline or comply with Rule 56 despite being warned by the Court that he must do so if he sought an additional extension. Berry's response brief is before the Court for its consideration, accordingly, his Motion to Supplement his motion for extension of time, (Dkt. 100), is **denied as moot**.

The Court will next address Berry's allegations that the law library stopped providing him with electronic notices from the Court. Berry provided the Court with a copy of a form memo from the law library supervisor, Marah Kelley, which indicated that he would not receive further notice of filings from the Courts in his cases. (Dkt. 98-2.) The Court gave the Defendants through March 15, 2021 to respond to Berry's allegation that the law library stopped providing him with electronic notices from the Court. (Dkt. 99 at 2.) The Court extended the deadline for the Defendants' response to the law library issue to March 19, 2021. (Dkt. 107.) The Defendants' response indicates the form memo stating that all notices must be by U.S. Mail, was created for state court cases rather than federal cases. In particular, Defendants state that "inadvertently, the

---

[2] Under the "prison mailbox rule," a prisoner's filing is filed when it is handed over to prison staff for mailing, *see Ingram v. Jones*, 507 F.3d 640, 643 (7th Cir. 2007). The Court notes that some of the pages of Berry's response brief were scanned out of order. The Court cites to the PDF page number rather than the page number provided by Berry at the bottom of each page.

state court cover sheet was appended to Mr. Berry's federal court document received by the law library in this case," and in error, Berry received the form memo stating that he would no longer receive electronic notices from the Court. (Dkt. 105 at 2.) Defendants report that while regretful, the error was harmless, because Berry continued to receive electronic notices from the federal court despite the communication error. *Id*. Berry has not disputed this information.

Concerning Defendants' Motion for Summary Judgment, Berry filed his Response in opposition on March 15, 2021, (Dkt. 104). The Defendants have not replied to Berry's response brief nor moved for an extension of time to do so. Accordingly, summary judgment motion is ripe for ruling.

### III.  FACTUAL BACKGROUND

Berry is currently incarcerated within the IDOC at Putnamville Correctional Facility ("Putnamville") and he is not in segregation. He suffers from Post-Traumatic Stress Disorder (PTSD) and was previously diagnosed with other mental health conditions while in IDOC custody, but he does not remember the specific designations. (Dkt. 79-1 at 17-19.)

**A.  Undisputed allegations in Berry's Amended Complaint**

Berry alleges the following facts which are not disputed by the Defendants. (Dkt. 80 at 2-3.) He was previously housed at Correctional Industrial Facility ("CIF") from October 31, 2017 to July 3, 2018. Defendants Warden Wendy Knight ("Knight"), Classification Specialist Kim Stafford ("Stafford"), and Investigator John Poer ("Poer") worked at CIF and made recommendations and decisions to place and keep Berry in segregation while he was at CIF.

Berry was housed at Wabash Valley Correctional Facility ("Wabash Valley") from July 3, 2018 to August 10, 2018. Defendants Deputy Warden Frankie Littlejohn ("Littlejohn") and Unit

5

Team Manager Kevin Hunter ("Hunter") made decisions to keep Berry in segregation while he was at Wabash Valley.

Berry was housed at Pendleton Correctional Facility ("Pendleton") from August 10, 2018 to December 6, 2019. Defendants Warden Dushan Zatecky ("Zatecky"), Deputy Warden Dennis Reagle ("Reagle"), and Counselor Chad Evans ("Evans") worked at Pendleton while Berry was there. Berry contends that Zatecky maintained a policy that allowed Berry to remain in segregation despite his mental health issues. Reagle agreed with Berry's placement in segregation. Evans did not seek reclassification for Berry when Berry thought he should.

**B.     Berry's Placement in Segregation at CIF**

Since 2017, Berry has received 25 disciplinary conduct reports including:

- February 2017: Disorderly conduct, battery by bodily waste, and fleeing or resisting staff;
- January 24, 2018: refusing to obey an order;
- February 23, 2018: possession of a controlled substance, possession of tobacco, and possession of unauthorized property;
- March 3, 2018: intoxication;
- May 30, 2018: possession of a controlled substance, participating in an unauthorized meeting or gathering, and four separate incidents of possessing tobacco; and
- July 17, 2018: refusing to obey an order.

(Dkt. 79-2.).

He was placed in segregation at CIF on May 9, 2018. The Defendants contend that this placement was a result of Berry's disciplinary history. Berry contends that he was placed in segregation in retaliation by Poer, that he was not properly evaluated until October 2019, and that

6

the Defendants' actions and failures to act violated multiple IDOC policies. (Dkt. 104 at 7-9, 18.) His medical records reflect the following assessments and evaluations.

Alisha Richey, LPN, conducted an initial review of Berry's placement in segregation. This review included a screening of Berry's suicide risk. Of 18 items, Berry only answered affirmatively for one—that he had a history of psychiatric treatment. (Dkt. 79-12 at 75). He denied suicidal ideation. *Id.* On May 11, 2018, Sarah Evans, MHP, completed a review of Berry's placement in segregation (formally known as Restrictive Housing Unit or RHU). Her report states:

> Offender Berry was seen by MHP for a 72-Hour RHU Review pending B-202 conduct report. He was reading when MHP approached his cell and denied needing to speak to MHP outside of cell. He denied any significant mental health concerns at this time and confirmed he is compliant with medication. He does not meet SMI criteria at this time. He denied any functioning impairments, psychotic symptoms, HI, SI, and mania. Placement in RHU is not clinically contraindicated at this time. He will be seen by mental health weekly for rounds.

(Dkt. 79-3.) While in segregation at CIF, Berry was evaluated by mental health professionals on a monthly basis, received medication for his mental health diagnoses, and was monitored for suicide risk. (Dkt. 79-12 at 9-75.) Berry disputes that he was evaluated for suicide risk on more than one occasion. (Dkt. 104 at 15.)

Due to his history of mental health issues, Berry's Individualized Action Plan was reviewed and adjusted on May 18, 2018. (Dkt. 79-4.) The plan's goals included that Berry's depressive symptoms would not impair his daily functioning and that there would be no decompensations

while in segregation. The plan called for Berry's participation in weekly mental health rounds and monthly visits with mental health professionals out of his cell. *Id*.

On June 5, 2018, Stafford recommended that Berry be transferred to another institution due to his receipt of seventeen conduct reports in twelve months. (Dkt. 79-6.) Specifically, she recommended transfer to a Maximum Security-Level 4 Facility. *Id*.

### C. Berry Remained in Segregation at Wabash Valley

Berry was transferred to Wabash Valley on July 3, 2018. Hunter approved him for placement in segregation on June 9, 2018, after psychologist Mary Ruth Sims PhD, HSPP, determined that Berry was not at high risk for decompensating in segregation despite exhibiting symptoms of an Axis I diagnosis. (Dkt. 79-7.) Berry states that Sims did not personally evaluate him when completing her report. (Dkt. 104 at 17.) His suicide assessment showed Berry had no incidents of serious self-harm or suicide attempts in the prior six months. (Dkt. 79-13 at 39.)

On the day of Berry's transfer, Wabash Valley Warden Richard Brown wrote a letter to Mike Osburn, the Southern Regional Director of the IDOC, stating that based on Berry's receipt of multiple conduct reports since his incarceration at IDOC, Warden Brown believed Berry should be placed on department wide restricted status housing. (Dkt. 79-8.)

On July 6, 2018, Berry was seen for a medical services intake. (Dkt. 79-13 at 33-35.) The report of this intake provides a detailed narrative description of the interactions with Berry and the clinician. Berry reported a history of psychiatric issues including "bipolar, antisocial, 4 or 5 different ones." *Id*. at 33. He stated that he received these diagnoses in 2011 or 2012 after he attempted suicide. His chart notes that he attempted to hang himself in the IDOC in 2016. Berry denied thoughts of self-harm at the time of the evaluation. *Id*. He reported auditory and visual

8

hallucinations but was found not to be reacting to internal or external stimuli. The examiner determined that Berry had "no observed functional impairment related to mental illness and [] no apparent need for mental health treatment." *Id*. at 34. He was to be seen regularly by mental health professionals and told to submit a request if he would like to be seen more often. *Id*. But, ultimately, Berry was found not to be seriously mentally ill. *Id*. at 39. Although the report does not clearly state which mental health professional met with Berry on July 6, 2018, the report produced in discovery states that it was generated by Ryan A. Harr Kulynych. *Id*. at 35. Berry disputes that he was ever seen by Mr. Kulynych. (Dkt. 104 at 11.)

An email was sent to IDOC personnel on July 16, 2018 from Wexford Medical Group, the medical provider to IDOC, also noting that Berry was not seriously mentally ill. (Dkt. 79-9 at 1.) On July 31, 2018, a classification hearing was held, and it was determined that Berry should remain in administrative segregation. (Dkt. 79-10.) Berry did not know that this classification hearing occurred. (Dkt. 104 at 11.)

A mental status examination was conducted on August 6, 2018. (Dkt. 79-13 at 1.) It was revealed during this examination that Berry's prescription for Mirtazapine had been inadvertently allowed to lapse on July 8, 2018, shortly after his transfer to Wabash Valley, and that this caused Berry to suffer increased symptoms of depression. Berry also reported a suicide attempt in January 2018 but denied serious issues at the time of the review. His diagnosis was recorded as "Major depressive affective disorder, recurrent episode, moderate degree." *Id*. at 2. Berry requested placement in a mental health treatment unit because he had been raped by his brother years ago and had coped with that trauma by using drugs and being violent, but he wished to learn better coping skills. Berry's prescription of Mirtazapine was renewed. *Id*. at 1. His Individualized Action

9

Plan was again reviewed an updated. *Id*. at 5-6. The plan's goals included psychotherapy and medication counseling, education, and monitoring by mental health professionals. *Id.*

### D.      Berry Remained in Segregation at Pendleton

When Berry was transferred to Pendleton on August 10, 2018, he remained in department wide administrative segregated housing. On August 14, 2018, his case manager, Evans, signed an Offender Prison Intake Case Plan that stated,

> Offender needs to remain on department wide for a minimum of one year and be clear of conduct for one year before he will be considered for ARSH. Offender should speak with mental health staff to receive self-study substance abuse (if applies) and anger management material for the evaluation period starting August 14, 2018.

(Dkt. 79-15 at 2).

Throughout his time at Pendleton, medical records indicate that Berry was monitored for mental health issues, given medication for his mental health diagnoses, assessed for suicide risks, and provided regular access to mental health professionals. (Dkt. 79-16 at 4-412.) On February 5, 2019, he was placed on a behavior modification plan to assist him in returning to the general population. (Dkt. 79-14.)

### III.  DISCUSSION

At all times relevant to Berry's claim, he was a convicted offender. Accordingly, his treatment and the conditions of his confinement are evaluated under standards established by the Eighth Amendment's proscription against the imposition of cruel and unusual punishment. *See Helling v. McKinney*, 509 U.S. 25, 31 (1993) ("It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Berry Eighth Amendment.").

10

Pursuant to the Eighth Amendment, prison officials have a duty to provide humane conditions of confinement, meaning, they must take reasonable measures to guarantee the safety of the inmates and ensure that they receive adequate food, clothing, shelter, and medical care. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To prevail on an Eighth Amendment deliberate indifference medical claim, a plaintiff must demonstrate two elements: (1) he suffered from an objectively serious medical condition; and (2) the defendant knew about the plaintiff's condition and the substantial risk of harm it posed, but disregarded that risk. *Id.* at 837; *Pittman ex rel. Hamilton v. Cnty. of Madison, Ill.*, 746 F.3d 766, 775 (7th Cir. 2014). "A significant delay in effective medical treatment also may support a claim of deliberate indifference, especially where the result is prolonged and unnecessary pain." *Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010).

Berry argues that the stress of being placed in segregated and restrictive housing for long periods of time, and behaviors such as the inadvertent lapse in providing him medication, contributed to his suffering from a serious medical condition. He argues he was never properly treated for mental health issues until after his transfer to Putnamville, (Dkt. 104 at 10); where he was told that he had "P.T.S.D, Paranoid, hear voices, anxiety, panic attacks, suicidal and homicidal thoughts (Dkt. 104-1 at 8). In addition, his diagnoses of depression and "Axis I Diagnoses," *Id*. at 50, all show that he suffered from a serious medical condition during the time periods alleged in his Amended Complaint. In contrast, the Defendants dispute that Berry suffered from a serious medical condition and they argue the evidence shows that while he was in segregation, Berry did not suffer from a serious mental illness that would preclude him from being placed in segregation. Considering the evidence in the light most favorable to Berry, the Court concludes that a material dispute of fact

11

exists as to whether or not Berry suffered from a serious medical condition.

Assuming that Berry's mental health diagnoses qualified as serious medical conditions, there is no evidence that any Defendant was deliberately indifferent to those conditions. At each facility, Berry was assessed by a mental health professional and his Individualized Action Plan was updated. He had access to weekly mental health rounds and monthly out of cell visits with mental health professionals. His medication was also managed to assure that his symptoms were being addressed and that he remained stable. On one occasion his prescription inadvertently expired but was renewed as soon as the error was discovered. All evaluations concluded that his placement in segregation was appropriate. When Berry was transferred to Pendleton in August 2018, he was placed on a behavior modification plan with the goal of being released from segregation.

At all times relevant to this litigation, Berry was under the care of medical staff employed by Wexford. As non-medical professionals, the Defendants' failure to overrule the decisions of medical professionals, in the absence of any indication that Berry was receiving inadequate treatment, does not constitute deliberate indifference. "'If a prisoner is under the care of medical experts ... a non-medical prison official will generally be justified in believing that the prisoner is in capable hands.'" *Giles v. Godinez*, 914 F.3d 1040, 1049 (7th Cir.), *cert. denied*, 140 S. Ct. 50 (2019) (quoting *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005)). "'[A]bsent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official ... will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference.'" *Id.* at 1049-50 (quoting *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004)).

Berry's response raises several arguments, but none create a material issue of fact. He contends that he was placed in segregation in retaliation by Defendant Poer, but there is no retaliation claim proceeding in this action. And the reason for Berry's placement in segregation is not dispositive of the question of whether the Defendants were deliberately indifferent to Berry's mental health conditions while he was in segregation.

Berry argues that he was often seen by mental health professionals who were not licensed psychologists or psychiatrists and that his mental health was not monitored continuously or daily as the Defendants argue in their brief. (Dkt. 104 at 8, 17.) But the Court has not relied on any statements that Berry was seen daily or was monitored continuously. The record reflects that he had access to mental health professionals on weekly rounds and when he submitted health care request forms. The Constitution does not require that inmates' mental health be managed only by psychiatrists or psychologists, or that inmates be monitored either continuously or on a daily basis. Berry also argues that he was not evaluated by a mental health professional before intelligence officer Poer investigated him. *Id*. at 12. But again, there is no Constitutional right to such an evaluation.

Berry contends that he was not properly diagnosed until he was transferred to Putnamville. But the Defendants remaining in this suit were not responsible for diagnosing Berry's mental health conditions—rather, this was the responsibility of the Medical Defendants who have been dismissed from this action. The voluminous medical records reveal that Berry was periodically evaluated by mental health professionals and had access to treatment. Under those circumstances, the Defendants—all officials of IDOC—reasonably relied on the determinations made by medical staff throughout Berry's time in segregation that he was not suffering from serious mental illness.

13

Berry argues the Defendants violated multiple IDOC policies, but 42 U.S.C. § 1983 "protects plaintiffs from constitutional violations, not violations of state laws or ... departmental regulations." *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003); *Mudd v. City of Fort Wayne*, 732 Fed. App'x 471, 472 (7th Cir. 2018) (same). A mere policy violation is not enough to show deliberate indifference.

Finally, Berry makes vague allegations that he went months without being seen by mental health professionals. The Court's review of the medical records produced by the parties reveals no such stretch of time where Berry was not seen on weekly rounds or was denied access to mental health services. The healthcare request forms submitted by Berry show that he was seen by mental health staff within a few days of each request. There is no evidence in the record that Berry suffered any harm as a result of not being seen immediately in these situations. For these reasons, the Defendants are entitled to summary judgment.

## IV. CONCLUSION

For the reasons explained above, Berry's Motion To Supplement Motion For Extension Of Time, Dkt. [100], is **DENIED as moot**. The Defendants' Motion for Summary Judgment, Dkt. [79], is **GRANTED**. Judgment consistent with this Order, and the Order Granting Joint Stipulated Dismissal with Prejudice of Medical Defendants, (Dkt. 90), shall now issue in a separate entry.

**SO ORDERED.**

Date: 3/26/2021

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Earlie B.A. Berry, Jr., #932151
PUTNAMVILLE CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

Thomas Joseph Flynn
INDIANA ATTORNEY GENERAL'S OFFICE
tom.flynn@atg.in.gov